**Jimmy W. FRANKLIN, Appellant
(Plaintiff below),**

v.

**Robert S. LOWE, Appellee (Defendant below).**

**No. 3177.**

Supreme Court of Wyoming.

March 10, 1964.

Samuel A. Anderson, Laramie, for appellant.

Williams, Wunnicke & Fennell, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

HARNSBERGER, Justice.

Plaintiff's action to recover damages from defendant because of injury plaintiff sustained while he was trying to control defendant's car, which was slowly rolling unattended down a slightly inclined street, was presented to a jury. At the close of the evidence the court instructed a verdict for defendant, and, judgment being entered thereon, plaintiff appeals.

The material facts as exhibited by the evidence, for the most part, seem undisputed and are as follows.

Defendant left his jeep, which weighed around 3500 pounds, in front of his residence unattended, facing downhill, upon a slightly inclined street, with the front wheels turned toward the rounded curb, the motor running, and the brakes not set. The vehicle started to roll slowly downhill, but its direction of travel turned so that it proceeded somewhat diagonally across and down the street toward plaintiff's automobile which was parked on the opposite side of the street in front of plaintiff's home some hundred or more feet diagonally from defendant's house. A two-and-one-half-year-old child of plaintiff was playing somewhere about plaintiff's premises, and plaintiff's grandfather was sitting in a chair on the driveway at the side of plaintiff's home. Defendant's wife, who was standing on the sidewalk a short distance downstreet on defendant's side, called out, "Stan, Stan," or perhaps, "Stan, the jeep, Stan, the jeep," and a neighbor lady who was with defendant's wife ran to the left-hand side of the jeep and seized the steering wheel. Defendant's wife also ran to the left side of the jeep as did plaintiff and his grandfather, all persons attempting to stop the rolling vehicle, and the defendant's wife finally getting into the jeep. Upon plaintiff's arrival at the jeep a lady running alongside impaired his entering the driver's side. He therefore positioned himself beside his grandfather at the left side of the jeep, pushing against the cowling of the radiator in an effort to stop the car's forward movement. Being unsuccessful in this attempt,

plaintiff started around the front of the jeep, intending to board the car from the other side. In trying to go around in front of the jeep, plaintiff's foot was caught under the jeep's left front wheel which then came up on plaintiff's leg, where it stopped. This injured plaintiff. There was some conflict in the evidence as to the exact distance from plaintiff's car the jeep came to a stop and whether the jeep was then headed toward plaintiff's car.

It is clear the defendant violated a city ordinance which provides, "No motor vehicle shall be left standing at the curb unattended unless the emergency brake is applied and left in that position, and the motor stopped * * *." Rawlins, Wyo., Ordinance 33, § 29, April 20, 1929. But the crux of this matter is whether, as a matter of law, plaintiff's actions were justified under the rescue doctrine or were an independent, intervening cause of his injury.

Appellant insists the doctrine of rescue gave sufficient legal reason for what he did in the effort to stop the jeep and prevent possible injury to his child, his own automobile, or even to other persons or other properties.

Appellee answers that uncontroverted facts make it plain there was no sufficient imminence of peril to persons or property; there is no evidence that plaintiff had any cause to fear or apprehend danger to either persons or property; that even in an attempted rescue plaintiff was still required to exercise ordinary care for his own safety; and therefore, plaintiff's conduct being rash and imprudent, his recovery in any event was barred.

As to the asserted lack of evidence of his apprehension of impending danger to persons or property, plaintiff testified he heard someone yelling "Stay in the jeep, stay in the jeep," which words voiced alarm as did those of defendant's wife calling out, "Stan, Stan." Plaintiff also said, "I saw the situation" and he followed his grandfather who with others ran to the jeep and tried to stop it. This, together with the evidence depicting the situation as hereinbefore set forth,

was sufficient to instill in plaintiff apprehension of an impending danger to persons and property and to prompt and justify his efforts in trying to avert those perils. A 3500 pound jeep rolling unattended upon an inclined street was sufficient evidence of imminent peril to both persons and properties. In Henjum v. Bok, 261 Minn. 74, 110 N.W. 2d 461, 463, where the situation was somewhat analogous to that now before this court, in that it involved an unattended vehicle rolling downhill in the vicinity of buildings, it was said:

"Finally, defendants contend that plaintiff was contributorily negligent as a matter of law. They argue that the trial court erred in instructing the jury as to the 'emergency' and 'rescue' doctrines since, among other things, the truck was not in fact headed for any building or other property, nor was the appearance of danger so imminent as to leave no time for deliberation.

"The so-called rescue doctrine does not affect the ordinary standard of care. The doctrine merely indicates that, where an attempt is being made to save human life or property, a reasonably prudent person will take greater risks than might ordinarily be justified. Similarly, the emergency rule is only an application of the reasonable man standard of care to a particular situation.

"In the instant case we have a situation where an unattended gasoline truck, partially loaded with inflammable gasoline, was rolling downhill in the vicinity of plaintiff's buildings. While the evidence regarding the speed of the truck was conflicting, plaintiff testified that it was moving at a 'good, fast walk.' Whether the truck would have actually struck a building or otherwise destroyed property is not controlling if the attendant circumstances created the apprehension of danger. In almost any situation an uncontrolled vehicle in motion, particularly one of this kind, creates such apprehension.

Common sense alone would almost seem sufficient to establish that plaintiff's reaction was instinctive and one to be expected in such a dangerous situation. Certainly we should not say that all reasonable men would have stood by and let the truck roll on."

Even though as defendant contends the fact that the truck in the Henjum case carried an inflammable liquid distinguishes that case from the one at bar, we think that the same principle must govern.

Under the circumstances described by the evidence in the instant case, a jury might properly conclude a reasonable person would not have stood idly by and let the jeep roll on because of the danger it could injure either persons or property.

In Pennsylvania R. Co. v. Snyder, 55 Ohio St. 342, 364, 45 N.E. 559, 563, 60 Am. St.Rep. 700, the court well expressed the applicable rule, as follows:

"* * * The question in such case is, not what a careful person would do under ordinary circumstances, but what would he be likely to do, or might reasonably be expected to do in the presence of the existing peril, *and is one of fact for the jury*. * * *" (Emphasis supplied.)

This statement of the rule was advanced by counsel and followed by the court in Pittsburgh, C., C. & St. L. Ry. Co. v. Lynch, 69 Ohio St. 123, 68 N.E. 703, 63 L.R.A. 504, 100 Am.St.Rep. 658; was approved in Cote v. Palmer, 127 Conn. 321, 16 A.2d 595, 599; and adopted in Brown v. Ross, 345 Mich. 54, 75 N.W.2d 68, 73, which also calls to attention that 2 A.L.I., Restatement, Torts, § 472, p. 1241, says, "It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the land or chattels of himself or a third person from harm," and the court then noted that this statement, in itself, contains the same limitation of reasonableness as is used in testing whether any act is negligent.

Also in Pittsburgh, C., C. & St. L. Ry. Co. v. Lynch, supra, 68 N.E. at 705, after saying "It is according to settled and salutary rules that a recovery is denied one who voluntarily goes into a place of danger, omitting to use present opportunities for circumspection and care, and failing to discharge his primary duty to regard his own safety," the court asked "But if the reason of the law is its life, can it be said that the same judgment awaits one who is required to act under circumstances which leave no opportunity for circumspection, and in the discharge of the primary duty to regard the safety of others?" As this indicates, and as we conclude in this case, the same judgment is not required of the injured person under the last-named circumstances as is ordinarily demanded, but he is entitled to recover in damages from the one who created the condition which stirred him to action.

Plaintiff cites the following excerpt from Prosser, The Law of Torts, ch. 6, § 36, p. 171 (2d ed.):

"* * * Most courts agree that there may be liability for unforeseen consequences, beyond the original risk, to those within the zone of apparent danger. If we extend this liability to others, we impose upon the defendant no new obligation of conduct; reasonable care will still protect him from liability. * * * The issue is one of whether the plaintiff's interests are to be afforded protection against defendant's conduct where the consequences exceed the fault; and 'duty' is nothing more than a word, and a very indefinite one, with which we state our conclusion."

Although not the latest authority in the matter, the late Judge Cardozo, when sitting as a justice of the New York Court of Appeal, said in his usual precise and illuminative way in Wagner v. International Ry. Co. (1921), 232 N.Y. 176, 133 N.E. 437, 438, 19 A.L.R. 1, "Danger invites rescue." "The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had."

From what is said, it should appear that the factual determination of liability in this case should have been left for the jury's consideration and that the court's direction of a verdict for the defendant was error.

Reversed and remanded for a new trial.